Good morning. My name is Tomas Gann. May it please the Court, I represent Mr. Cameron Roupe, the appellant plaintiff in this case. Your Honors, I'd like to try to reserve three minutes for rebuttal. The central issue before this Court is whether the District Court erred when it accepted the defendant's version of the events and rejected Mr. Version's – I'm sorry, Mr. Roupe's version on summary judgment, even though Mr. Roupe was – I think the district judge actually explicitly rejected. But he says no reasonable trier fact. He actually says – I believe. The judge said that if Mr. Roupe's version of events was true, then there would be evidence that the – that Officer Strickland's conduct was malicious and sadistic. But because there's, quote, virtually no evidence of it, he found that it was not. To me, that's absolute rejection of that. Otherwise, why say it? Does – did your client at any point, by way of affidavit or testimony, say that he did not bend back the figures of the hospital guard – fingers of the hospital guard? There's no sentence in his complaint or his addendum to his complaint or his declaration that says, I did not bend back Mr. Listenbee's fingers. What there is is a description of the events as they occurred that excludes that possibility. Sort of basic philosophical principle of the theory of non-contradiction. You can't have two opposing things in the same place at the same time in the same respect. And Mr. Roupe said that the reason that he was tased is because he was insulting the officers, that before he was tased, the officers told him, you don't know what pain is. Shut up or we're going to tase your gray ass. And then, and I think this point is crucial, Mr. Roupe says that Officer Strickland went and shut the curtains around the hospital bed. He also says that he was fully restrained such that he could not move his arms or limbs at all. There was reason for that restraint, wasn't there? Oh, yeah. When the officers arrived, was it a dry cleaning store? When the officers arrived what, Your Honor? When the officers arrived at, what was it, a place of business? When Mr. Roupe was on top of his ex-girlfriend strangling her? No question that Mr. Roupe should have been pulled off of his victim. No question that the officer should have put him in his place. No question that he even should have been restrained. The question is, is there, accepting all inferences that are reasonable in his favor and seeing it, in the light most favorable to Mr. Roupe, is it possible that Mr. Roupe did not bend back the fingers and that that wasn't the motivation? Is it possible, viewing those lights in Mr. Roupe's favor, that the reason that he was tased was because he was insulting the officers, he was being a jerk, and he was saying offensive things? As the district court said, if that's the reason that he was tased, that's evidence of sadistic and malicious conduct. Didn't he claim that he was tased in the scrotum? Yes. Does the medical evidence support that? Wasn't he tased in the leg? In fact? I'm sorry. Wasn't he, in fact, tased in the leg? Well, that's a question of material fact. The truth is that he said, Mr. Roupe said he was tased in the thigh and he had injuries on his scrotum. And when you say, does the physical evidence support it, there's not a note in the medical record that indicates injuries to the scrotum, but there's also no record about whether or not he had his scrotum examined or whether or not, at the time, he told the nurses that he had injuries to his scrotum. Again, if we're seeing the facts in the light most favorable to Mr. Roupe, a trial attorney should get to explain to the jury that there could be all sorts of reasons why a prisoner is not going to tell his nurse that his scrotum hurts. That's a question of fact. That's something for a jury, not for a judge, to decide to stop it from going to the fact finder. And, Your Honor, as to this issue of did he ever expressly deny that he was pulling back the fingers, the truth is that the scenario that he described doesn't allow for that to have existed. By saying I can't move my arms, he's saying I didn't grab the fingers and pull them back. By saying the reason they tased me was because I was being a jerk and because I was mouthing off, it's both expressly stated and implicitly stated that he's not physically grabbing anybody. And, frankly, if we're getting into whether or not this is an issue of material fact, if I'm the trial attorney and I actually get to try this case in front of the jury, I get to point to the testimony or the report of Officer Warmly. That's at SER 127. And in his report, he says that the reason Mr. Rupp was restrained was because he was being uncooperative and he used the F word. And then he was tased, Officer Warmly says he was tased because he tried to grab Chad Lizenby's hand. That's a very different description than he grabbed the guy's hand and twisted his finger back. My only point is there's a lot of different facts that are being asserted by different parties here. That's exactly the sort of situation where a district court judge should allow the credibility of each of those individuals to be weighed by the jury, not by the court. And I haven't found one case, and defense hasn't found one case, where the trier of fact is deprived of the opportunity to weigh credibility because the district court judge makes that determination on their own in summary judgment as a basis to grant qualified immunity. So, Your Honor, I'm simply asking that Mr. Rupp have an opportunity to present these facts to a finder of fact or jury. And with that said, if there's no more questions, I'll reserve the remainder of my time for rebuttal. Thank you, Your Honor. Thank you, Counsel. Thank you, Counsel. Good morning, Your Honors. I represent Defendants Veatch and Strickland. Just quickly, I want to point out that there has been no argument regarding Mr. Veatch that he did anything. It's undisputed that he did not use any force against Mr. Rupp and that he did not individually participate in any conduct of use of force. And so under the Truman v. Wright case, there is no basis for a claim against him. And that claim is properly, the dismissal is properly affirmed. As to the claim against Strickland, this Strickland and Veatch together, obviously, were tasked with obtaining medical treatment for Mr. Rupp after all the things that he did. Mr. Rupp was committed or convicted of a felony for his violence towards the victim, his victim. He had to be tased and he fought arresting officers and resulting in injuries to himself and to others. The record in this case is undisputed as to the reason that Strickland says that he applied the taser and that is that the plaintiff, Rupp, grabbed the fingers of the hospital security officer and bent them backwards and he disobeyed or did not comply with a command. He has another version of this incident that Counsel just articulated. The version you're talking about is in an unverified complaint. No, it's verified. Your Honor, it isn't. It is verified. At the bottom of that complaint, it's verified. If you look at, Your Honor, SCR 159. The addendum, which is attached to it, doesn't have a separate verification at the bottom of the addendum, but the complaint itself was he attempted to verify it. There's two complaints, Your Honor. One of them is handwritten and it is signed SCR 159. Hold on. Oh, here we go. Okay. It's SCR 159. That is the one that's being referenced to here with these alleged facts. It is specifically signed without any verification. Oh, yeah. No. He refers to it in the form complaint. That's right. He says he attached. He refers to it. At the bottom of the form complaint, it says, I declare under penalty of perjury if the foregoing is true and correct. Your Honor, what you're referring to. Well, I'm just reading it. It says here form complaint. If I may respond, Your Honor, I recognize that it was attached to that form complaint and that the form complaint has the language that you're talking about. Right. He's a pro se. We're supposed to read his pleadings liberally. But the part that is verified is the part that he wrote in there. He says he attached an addendum. He could have said, you know, the things that I wrote in my unverified complaint are true. He did not verify those facts. The way I would read this, a prisoner under our case law, we're supposed to look at his pleadings generously. Okay. All right. He filed a form complaint that the district court provides. Right? Right. He makes reference to the addendum. The form complaint is verified. Okay. I guess. Well, that's what I mean. Look, I'm not. I guess I don't agree with that, Your Honor, but I understand your argument, but I'd like to move on from there. I'm not arguing. I'm just telling you what I see. Right. Well. I mean, our case law instructs and tells everybody that when you have a pro se prisoner, you look at their complaint and you read it generously. Okay. They get the benefit of the doubt. But rule 56 also says that you can't rely upon unverified complaints to raise issues of fact. Rule 56, the whole purpose is to pierce the pleadings. So the real problem here is he's got this verified complaint. What he does in opposition to the motion for summary judgment. Okay. I'll move on to that. Is he incorporates statements from that addendum. No, he incorporates the statements from the officers about what happened. Right. And then he never really denies it. Exactly. And that's the whole point here, Your Honor, is that even if you read what I call the unverified complaint, it does not dispute what the officer said was the reason for the use of force, that he bent back the fingers. It isn't in there. And when he repeats it in referring to the officer's version of the events multiple times, saying that he used the taser, bending back my fingers, he does not ever say that that didn't happen. That's not true. That's all he had to say. This is a smart, legally sophisticated person. He wrote very good briefs, better than some lawyers that I've seen, in presenting his pleadings. He knows how to verify things under oath. He cannot be prosecuted for perjury, for lies said in that unverified complaint, because all he has to do is turn around and say, look, I didn't sign that under oath. I signed the other thing under oath, and I just attached an unverified pleading to it. And this is going to be used to deprive a police officer of the right to qualified immunity, a privilege against suit? Your Honor, I... Your major point, which I think has kind of gotten lost in the last exchange, is that he never really denied the officer's version of events. Right. Yes or no? That's exactly right, Your Honor. That is the point. In order to raise an issue of fact, you have to controvert there. And he provides a separate explanation, if you take what he says in the unverified complaint, that provides a different reason for motivation for the use of the force. I acknowledge that. But there's no dispute. My clients don't dispute that he was complaining about the officers that arrested him. He didn't dispute that the officers saw or that he was bending back the fingers of the hospital security officer. There isn't any dispute about those facts. What the real dispute about is the motivation of the officer. But that is not a reason for denying qualified immunity here. And, in fact, there's a Ninth Circuit decision that's cited in my brief, the Schroeder v. McDonald case, that deals with that exact issue. This is a case where an inmate claimed that prison officials had an improper motivation because they retaliated against him for filing an earlier civil lawsuit by sending him from a minimum security to a medium security prison. So it was a retaliation argument. But the prison officials said, no, the reason that we did that is because you were a disciplinary problem and we had these other problems with you. So there was a dispute about the motivation. There wasn't any dispute about the fact that he had complained and made a lawsuit against the prison officials, and there wasn't any complaint that he engaged in disciplinary problems. What the Ninth Circuit did in that case was to hold that the argument about the motivation was not sufficient to deprive the officials of qualified immunity because officers could have believed that the transfer was lawful. That's the qualified immunity test. It is not a strict test of just saying whether or not there was a question of fact as to a violation of the constitutional privilege. That's what the Saussure case said. You can't just rely upon that. There is a separate analysis for qualified immunity. There is a privilege against lawsuits, a qualified privilege that law enforcement have that regular litigants don't have, and you have to address whether or not the officer could reasonably have believed that what they did was lawful. They could do that, the Ninth Circuit held, in that Schroeder v. McDonald case because the guy had been a disciplinary problem, and the fact that he was alleging that, no, that wasn't the reason, the real reason was because they were retaliating against me for making complaints against the prison officials, that doesn't survive qualified immunity. The same is here true. It's true here. Officer Strickland could, and any objective officer, could have reasonably believed that using the taser, when Mr. Rupp bent back the fingers of the office security officer and did not comply with commands to stop, that that presented an immediate risk to the safety of the hospital security officer. You framed the question that way. The answer to that was pretty easy. But the question is whether or not he bent back the fingers. And it was never denied by Mr. Rupp in any of his pleadings. And Schroeder, that's exactly the way the Ninth Circuit posed the question in Schroeder v. McDonald. So, Your Honor, this is a qualified immunity issue. If it didn't have qualified immunity, if that layer weren't there, maybe you would find that there was some issue here. But it exists. I think you've been invited to do exactly what happened in the Saussure case where the court fused together the qualified immunity analysis and the constitutional excessive force analysis and took it as one thing. And the Supreme Court said, no, you can't do that. Qualified immunity is a separate issue. They can't be fused together. So I would encourage the court not to follow that track, to apply the law as the Supreme Court has said it regarding qualified immunity and to protect the privilege under this that Strickland has to reasonably use force in circumstances that have not been controverted by the plaintiff. Thank you. Thank you, counsel. Okay, Mr. Covey, thanks. Mr. Gahan. Thank you, Your Honor. Counsel said that the evidence is undisputed. The district court did not agree. The district court said had Officer Strickland used the taser in the manner that my client alleged, the use of force might well be characterized as excessive since the allegation suggests that the point of the tasering was to maliciously and sadistically cause harm because this would have required a wanton state of mind. The court just didn't believe Mr. Rupp's version. But why didn't Mr. Rupp submit his statement in opposition to the summary judgment motion? If we're going to take all reasonable inferences in his favor, I think it's a very reasonable inference to assume that when he says that I couldn't move my arms, that before he tased me, Officer Strickland threatened me and then sealed off from view where we were by closing the curtain. And then he told me he was going to tase my gray ass. And then he tased him? I believe if we really are taking reasonable inferences in his favor, that he saw that as a statement that directly contradicted what Officer Strickland said. Your client, in his opposition, took portions of the officer's version of events. Am I correct about that? Yes. And laid them out. And I have a question. Anywhere in doing that, did he say that did not happen? No. He does not say that did not happen. What he says is, well, Officer Strickland says this, and then Mr. Rupp writes a different fact. I disagree with Mr. Kugler's characterization, as my client is especially legally sophisticated, and I think that pleading sort of proves it. There's something about that. Whether it's sophisticated or not, how much sophistication does it take when you recount an officer saying, this is why this happened? How much sophistication does it take to say this did not happen? Well, to think that to say a factual scenario that directly contradicts the one that was just stated doesn't sufficiently contradict it because it's not on the nose enough is sort of a legal approach. It's not that, you know, if you tell somebody what happened to you, you give one version of events, and then somebody says a completely different version of events, it doesn't take a big stretch to say, well, those two are in opposition, therefore you're rejecting the first one. Okay. Let me try it another way. Did he ever say, here's what really happened? Well, he said what really happened. Did he say that? Did he say the phrase, here's what really happened? Yeah. No, but he said what happened, and the implication by signing it is that that's what really happened, especially, and this is why I'm here, because of this legal principle. We can't abandon the notion that we suddenly stop reviewing these facts in the light most favorable to the non-moving party, especially a, say, non-moving party. And, frankly, we're giving Officer Strickland all of the favorable inferences when we're doing this. And, you know, it's an interesting exercise to sort of switch it. Officer Strickland never said, I didn't tell him, never denied that he threatened him, never denied that before tasing him he shut the curtains, never denied that he told him he didn't know what pain was, but certainly when you read Officer Strickland's description of events, you see it as contradictory to my client's. And that's because the motivation that Officer Strickland's describing is a very different one, as the district court noted, than the motivation that my client is describing. And in the light most favorable to my client, he should get to tell the jury about it. Thank you, Your Honor. Thank you, counsel. We'll again thank Appellant's counsel for his pro bono service, and we thank both Appellant's counsel and Appellant's counsel for their strong arguments. Thank you. Kathy, so the Roop case 1535063 is now submitted, and we'll turn to the Palomares case. We'll have Teresa Palomares v. Commissioner of Internal Revenue and it's number 15-75 or 15-70659.
judges: Hawkins, Gould, Paez